UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTHOINE DESHAW ODOM #228931,

        Plaintiff,              Case No. 2:10-cv-31

v.                                       Honorable R. Allan Edgar

PATRICIA L. CARUSO, et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Burk, Caruso, Marsky, McQuiggin, Capella, Johndreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, Straub, Gajewski, Turner, Negalie, Huhta, Hidego, Erkkila, Lambert, Adams, McClellan, Smith, Senior, Prison Guard Hill, and Hearing Investigator Green. The Court will serve the complaint against Defendants Snow, Benton, Hemmila,

Appelow, Tolleftson, LeClare, Chosa, Codere, Hytajaa, Moran, Peterson, Carr, Nurse Nancy, Richards, and Mills

_____

**Discussion**

I. <u>Factual allegations</u>

Plaintiff Anthoine Deshaw Odom, an inmate at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff recites a laundry list of allegations against Defendants Patricia L. Caruso, Stephen H. Marsky, Warden Unknown McQuiggin, Assistant Deputy Warden Unknown Johndreau, Assistant Deputy Warden Unknown Larson, Unknown Capella, Sergeant Ray Hay, Jeri-Ann Sherry[1], Resident Unit Manager Unknown Meni, Assistant Resident Unit Supervisor Unknown Warr, Deputy Linda Tribley, Resident Unit Manager Unknown Gajewski, Guard Unknown Negalie, Guard Unknown Huhta, Guard Unknown Hidego, Guard Unknown Turner, Guard Unknown Hill, Nurse Supervisor Gloria Hill, Nurse Unknown Richards, Nurse Unknown Chosa, Nurse Kenneth Codere, Nurse Janet Hytajaa, Ann Moran, AMF Inspector Unknown Party, Hearing Investigator Unknown Green, Sue Burk, Unknown Snow, Unknown Benton, Kevin Hemmila, Unknown Pellow, Tod Tolleftson, Unknown LeClare, Stephen Raymond, Psychologist Unknown Lambert, Unknown Adams, Sergeant Unknown McClellan, Unknown Erkkila, Inspector Unknown Party[2], Deputy Director Unknown Straub, Inspector Unknown Smith, administrative segregation Supervisor Nurse K. Carr, Unknown Nancy R.N., Unknown Mills R.N., Unknown Senior R.N., and Nurse Paul Peterson. Plaintiff's claims all

_____

[1] Also named in the complaint as Defendant Jeri-Ann Sheri.

[2] Because the court is unable to serve an unknown party, he / she is not properly a defendant.

concern his alleged mistreatment while incarcerated at the Baraga Maximum Correctional Facility (AMF).

In his complaint, Plaintiff alleges that on March 27, 2008, just before he was to be transferred to AMF, he suffered from a chemical brain disfunction and sliced his wrists. Plaintiff states that Unknown Parties on third shift refused to provide him with medical attention. Plaintiff states that he was escorted to the control center, while blood continued to drip from his cuts. Plaintiff claims that he could see the "flesh and bone" and that no one from medical was called to attend him. When the transport officer arrived, he observed Plaintiff's wound, but did not call for medical assistance. Plaintiff was placed in the van with other prisoners, who immediately began to protest that Plaintiff was wounded. When the van pulled into the "cross meet" at the St. Louis Correctional Facility, where prisoners change vans to go to various facilities, Plaintiff was called off the van to be strip searched. At this point, medical staff were called and Plaintiff's wounds were bandaged.[3]

When Plaintiff arrived at AMF, he filed a grievance regarding the delay in medical treatment for his wounds. Plaintiff states that someone must have intercepted his grievance because he never received a response. Plaintiff filed a second grievance, with the same results. Plaintiff also filed a grievance against the law librarian, and that he was subsequently transferred from 2 Unit to 3 Unit, which is more intense and is a disciplinary unit. Plaintiff alleges that within a week, he was being brought before the Assistant Resident Unit Supervisor about a grievance that Plaintiff had filed regarding Resident Unit Officers in 3 Unit coming in to his cell and removing the data entry cover

---

[3] Plaintiff does not name any of the parties involved in the alleged delay in medical treatment for his wounds. Therefore, the court need not address this claim.

sheet to his medical records. Plaintiff also claims that he was retaliated against by Defendant Codere for filing grievances on him and other health care staff.

Plaintiff states that on July 19, 2008, during his was at the Security Classification Committee (SCC) meeting, he stated that he was being refused his medications, and that he was being kept in administrative segregation because of hearsay. Plaintiff also stated that the reason he received the misconduct ticket from Defendant Codere was because he had written grievances on him. Plaintiff asserts that a review of the misconduct hearing report shows that Defendant Burk's reasons for excluding his requested video evidence, that it was unnecessary, was vague. Plaintiff claims that the video evidence would have shown that he was not beating at his door as claimed by Defendant Codere, because it would have shown that the door was not "jumping from the impact" of Plaintiff's punches. Plaintiff also wrote a grievance on Defendant Hearing Investigator Green, asserting that she had refused to produce documents requested by Plaintiff or to thoroughly investigate.

Plaintiff states that he filed a grievance on Defendant Meni for failing to pick up Plaintiff's legal mail on August 12, 2005. Plaintiff also filed a grievance on Defendant Meni for giving him the "silent treatment" on August 11, 2005. Plaintiff filed a grievance on Defendant Huhta for manipulating the nurse into ignoring Plaintiff during her rounds, despite Plaintiff's chronic medical conditions. On October 12, 2008, Defendant Negalie brought him a breakfast tray without a lid. Plaintiff states that food looked as if someone had played with it. Plaintiff refused the tray and asked to see the Sergeant, but Defendant Negalie refused and shouted obscenities at Plaintiff. Defendant Negalie was subsequently moved to another wing and Defendant Turner became the Resident Unit Officer.

Plaintiff alleges that Defendant Turner comes into his cell when he is not present, but that he does not enter the cells of the other inmates on the unit. On November 9, 2008, Defendant Turner "falsified" three restrictions and posted them on Plaintiff's cell door. During lunch, Defendants Turner and Negalie ordered Plaintiff to get on his knees on the bunk and face the wall with his hands on the wall. Plaintiff obeyed. When Defendants Turner and Negalie again ordered Plaintiff to face the wall on his bunk, and Plaintiff obeyed. However, Plaintiff had forgotten to scoot his tray over to the front of the door where Defendants could reach it. Consequently, Plaintiff received a misconduct ticket and was later found guilty of the misconduct, despite his testimony that the ticket was retaliatory.

On November 20, 2008, while being housed at AMF, Defendant Erkkila used derogatory and demeaning language toward Plaintiff, and threatened to "fuck" Plaintiff up. Defendant Erkkila also told Plaintiff that he was going to write a "bunch" of tickets on Plaintiff. Plaintiff was moved from "3 unit to 1 unit" on December 12, 2008. On December 18, 2008, Plaintiff went to a hearing and when he returned to his cell he discovered that a file with more than 200 pages of legal documents was missing. The next day, Plaintiff asked to talk to the sergeant at 5:30 a.m., but was told that the sergeant had already made his rounds. Plaintiff then claimed to be in danger of physical injury, but he was still not allowed to speak to the sergeant. Plaintiff sent a letter of complaint to Defendant Marsky and the Michigan State Police. On December 15, 2008, Inspector Karen R. Halliday told Plaintiff that his complaint had been referred to her. Plaintiff claims that AMF is now retaliating against him by intercepting his mail.

Plaintiff states that he has been assaulted three times, but fails to allege any specific facts regarding the claimed assaults. Plaintiff alleges that on January 7, 2009, as he was being

interviewed by the SCC, Defendant Sherry disregarded Plaintiff's claims that he was being retaliated against by prison staff. Plaintiff also cites *Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000) for the proposition that "[i]f hearing officers focus on finding 90% of the defendants before them guilty, as the evidence adduced thus far suggests, they cannot possibly be impartial, as is required by *Wolff*. The prisoner whose case merits a not-guilty finding, but whose case would result in the eleventh not-guilty finding in one hundred decisions, is sunk. His fate is sealed before his file is opened. Such a system reeks of arbitrary justice, which can only be injustice." *Id.* at 606. However, Plaintiff fails to allege any facts showing that there was any such requirement at the time of his misconduct hearings.

Plaintiff claims that he periodically had verbal altercations with Defendant Hemmila, during which Hemmila called Plaintiff a crack head. Plaintiff claims that during his dental appointment, the dentist suddenly told him that he would have to reschedule him because none of the staff wanted to work overtime. Plaintiff asserts that during his hearing, when he attempted to get Defendant Sherry to address the harassment by staff, she put the focus back on Plaintiff, repeating the assertions made against him during ordinary SCC meetings. Defendant Sherry attempted to explain to Plaintiff how to "get along" and Plaintiff responded that it was just rhetoric. Defendant Sherry then ended the meeting. Plaintiff stated that when he was leaving the hearing room, he heard Defendant Sherry say, "Oh this is the one who's planning on suing me, I don't think he has enough money to sue me." Plaintiff claims that officers grabbed him to take him back to his cell, all the time telling Plaintiff to "stop resisting." Plaintiff believes that this was all part of a plan to set him up for a fake assault charge. Plaintiff was later reviewed on an assault charge by Defendant McClellan. Plaintiff subsequently told Defendant Tolleftson that he was not going to give

up the restraints until he was allowed to press charges against staff. Defendant Benton then came to Plaintiff's cell and asked him to give up the restraints. Plaintiff told Defendant Benton that he could not believe that he had the nerve to come to Plaintiff's cell after he had just assaulted Plaintiff.

Plaintiff claims that all of the Defendants engaged in harassing him and writing false misconduct tickets in retaliation for his use of the grievance procedure. In addition, in Plaintiff's amended complaint, which actually appears to be more of a supplemental complaint, Plaintiff alleges that he asked Defendant Paul Peterson, R.N., about a screening and being called out for chart review, but that he was never called out. In addition, Plaintiff claims that on March 28, 2010, he was "breaking out" and that Defendant Mills, R.N., refused to respond to Plaintiff's request for medical care for his burning and itchy skin. Plaintiff states that when he asked for his medication, Defendant Mills told him to file a grievance. Plaintiff filed numerous grievances on Defendants Mills, Peterson, Carr, Hytajaa, and Nurse Nancy, but he still did not receive his medications. Plaintiff claims that the denial of medical care violated his Eighth Amendment rights. Plaintiff seeks damages and equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that Defendants engaged in a variety of misconduct, including writing false misconduct tickets on him, in retaliation for his use of the grievance procedure. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the

protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

In this case, Plaintiff asserts that he filed a variety of grievances and that, thereafter, every action taken by Defendants was motivated by a desire to retaliate for those grievances. This allegedly improper conduct by Defendants included misconduct tickets and the refusal to believe Plaintiff's side of the story during his misconduct and SCC hearings. However, Plaintiff fails to

protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

In this case, Plaintiff asserts that he filed a variety of grievances and that, thereafter, every action taken by Defendants was motivated by a desire to retaliate for those grievances. This allegedly improper conduct by Defendants included misconduct tickets and the refusal to believe Plaintiff's side of the story during his misconduct and SCC hearings. However, Plaintiff fails to

allege any specific facts showing that any of the Defendants' conduct was motivated by a desire to retaliate against him. The fact that Plaintiff apparently filed numerous grievances necessitates that any actions taken by Defendants would have some temporal proximity to the filing of a grievance. The court concludes that this is not significant enough to state a retaliation claim.

Plaintiff also claims that Defendants Caruso, Marsky, McQuiggin, Capella, Jondreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, and Straub violated his constitutional rights by failing to properly supervise their subordinates or to satisfactorily respond to his grievances. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing

that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

As noted above, Plaintiff has not alleged facts establishing that Defendants Caruso, Marsky, McQuiggin, Capella, Jondreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, and Straub were personally involved in the activity which forms the basis of his claim. The only roles that Defendants Caruso, Marsky, McQuiggin, Capella, Jondreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, and Straub had in this action involve the denial of administrative grievances or the failure to act. Defendants Caruso, Marsky, McQuiggin, Capella, Jondreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, and Straub cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert.*

*denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso, Marsky, McQuiggin, Capella, Jondreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, and Straub are properly dismissed for lack of personal involvement.

Plaintiff also claims that on January 7, 2009, he was assaulted by Defendants Snow, Benton, Hemmila, and Appelow[4], and that Defendants Tolleftson and LeClare witnessed the assault and did nothing to stop it in violation of Plaintiff's Eighth Amendment rights. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.* Plaintiff also states that following the assault, he requested treatment for injuries to his elbow, such as ice packs and ibuprofen. These allegations are sufficient to state an excessive force claim under the Eighth Amendment. Therefore, Plaintiff's excessive claims against Defendants Snow, Benton, Hemmila, Appelow, Tolleftson and LeClare may not be dismissed upon initial screening.

Plaintiff claims that Defendants Negalie, Turner, Huhta, Hidego and Erkkila have harassed him on numerous occasions by using racial slurs and by questioning him regarding his sexual preference and medical status. In addition, Plaintiff claims that Defendants Negalie and Turner refused to give him his tray on one occasion. Use of harassing or degrading language by a

---

[4]Also named as Pellow.

prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997)(verbal harassment is insufficient to state a claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Nor does the denial of a single meal rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment claims against Defendants Negalie, Turner, Huhta, Hidego and Erkkila are properly dismissed.

Plaintiff claims that Defendants Chosa, Codere, Hytajaa, Moran, Peterson, Carr, Nurse Nancy, Richards, and Mills all refused him treatment, as well as prescribed medications. These allegations state an Eighth Amendment claim and are not properly dismissed upon initial review.

Plaintiff claims that Defendant Gajewski had him transferred from one unit to another within AMF in violation of his rights. It is well-settled that transfer to another institution does not implicate a protected liberty interest of the prisoner. *Wilson v. Yaklich*, 148 F.3d 596, 601 (6th Cir. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 478 (1995); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Nor does the transfer of a prisoner from one unit to another within the same prison implicate such a right. Therefore, this claim is properly dismissed.

Plaintiff also claims that he was subjected to false misconduct tickets in violation of his due process rights. However, Plaintiff concedes that he received hearings on each of the misconduct charges. In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in "life, liberty or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569-70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986). Therefore, it is clear that Plaintiff received due process of law.

Plaintiff's claims against Defendant Burk are precluded by absolute judicial immunity since the alleged acts were committed in the performance of her duties in prison disciplinary hearings. *See Shelley v. Johnson*, 849 F.2d 228, 230-31 (6th Cir.1988).

Plaintiff's complaint fails to allege any specific facts showing that Defendants Lambert, Adams, McClellan, Smith, and Senior engaged in any unconstitutional conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Therefore, Defendants Lambert, Adams, McClellan, Smith, and Senior are properly dismissed.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Burk, Caruso, Marsky, McQuiggin, Capella, Johndreau, Larson, Ray Hay, Sherry, Meni, Warr, Tribley, Gloria Hill, Raymond, Straub, Gajewski, Turner, Negalie, Huhta, Hidego, Erkkila, Lambert, Adams, McClellan, Smith, Senior, Prison Guard Hill, and Hearing Investigator Green will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Snow, Benton, Hemmila, Appelow, Tolleftson, LeClare, Chosa, Codere, Hytajaa, Moran, Peterson, Carr, Nurse Nancy, Richards, and Mills.

An Order consistent with this Opinion will be entered.

Dated: 11/12/2010          */s/ R. Allan Edgar*
                           R. Allan Edgar
                           United States District Judge